UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| FRANCISCO MIGUEL PENA CARDENAS, et al., | No. 2:24-cv-01814-DAD-JDP |
|---|---|
| Plaintiffs, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION |
| F.D. THOMAS, INC., | (Doc. No. 4) |
| Defendant. | |

This matter is before the court on defendant's motion to compel arbitration. (Doc. No. 4.) On August 2, 2024, the court vacated the hearing on the pending motion. (Doc. No. 10.) Having reviewed the parties' briefing, the court finds defendant's motion suitable for a decision on the papers. Local Rule 230(g). For the reasons set forth below, defendant's motion will be denied.

**BACKGROUND**

On May 9, 2024, plaintiffs Francisco Miguel Pena Cardenas, Fernando Verdusco, and Jesus Acevedo Jr. filed this action in the Sacramento County Superior Court against defendant F.D. Thomas, Inc. and unnamed Doe defendants 1 to 50. (Doc. No. 1-2 at 8.) In their complaint, plaintiffs bring state law claims for sexual harassment in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12940(j)(l), (k), 12965, et seq.; retaliation in violation of FEHA, *id.* § 12940(h); failure to prevent harassment and

1

retaliation in violation of FEHA, *id.* §§ 12940(i), (k), 12965, et seq.; constructive termination of plaintiffs Pena Cardenas and Acevedo; wrongful termination of plaintiff Verdusco; retaliation in violation of California Labor Code § 1102.5; and negligent retention and supervision. (Doc. No. 1-2 at ¶¶ 36–88.) On June 27, 2024, defendant removed this action to this federal court pursuant to diversity jurisdiction. (Doc. No. 1 at 3–6.) In their complaint, plaintiffs allege as follows.

Plaintiff Pena Cardenas was employed by defendant from approximately April of 2020 until approximately May 11, 2022. (Doc. No. 1-2 at ¶ 13.) Throughout plaintiff Pena Cardenas's employment, Jose Luis Cueller, a foreman for defendant, "made sexually harassing comments to" him. (*Id.* at ¶ 16.) On one occasion, the foreman said to plaintiff Pena Cardenas "you want to fuck," "I was serious, the bathrooms are right there," and, when the foreman's advances were rejected, "I'm the foreman you must respect me." (*Id.* at ¶ 14.) In another incident, plaintiff Pena Cardenas "was welding while on his knees when" the foreman "began to aggressively grope Cardenas while humping him and making vile and crude sexual comments." (*Id.* at ¶ 15.) When plaintiff Pena Cardenas verbalized he was hurt, the foreman responded "I don't give a fuck about you, you son of a bitch . . . give me your dick." (*Id.*) In his "attempt to flee, his finger was burned." (*Id.*) The foreman also took a video of plaintiff Pena Cardenas without his consent, "posting the video to TikTok captioned 'this guy has a large butt, and this guy doesn't have a butt.'" (*Id.* at ¶ 16.) Similar inappropriate and harassing comments continued "at least 3-4 times per week with multiple incidents of" the foreman "pinning and holding Cardenas down while humping him." (*Id.* at ¶ 17.)

Plaintiff Verdusco was employed by defendant from approximately April of 2016 through approximately June 17, 2022. (*Id.* at ¶ 19.) Juan Deras, a superintendent for defendant, "would make sexually harassing comments and physically grope Verdusco's buttocks and groin from behind on average every other shift they worked together." (*Id.* at ¶ 20.) "Despite Verdusco repeatedly asking him to stop and pulling away," the superintendent "continued to sexually harass Verdusco throughout Verdusco's employment." (*Id.*) On or around June 13, 2022, plaintiff Verdusco reported this sexual harassment to defendant's HR department, Vice President, and

/////

1  union representative.  (*Id.* at ¶ 23.)  On or around June 17, 2022, defendant terminated plaintiff
2  Verdusco.  (*Id.* at ¶ 26.)
3        Plaintiff Acevedo was employed by defendant from approximately August of 2018 until
4  approximately May of 2022.  (*Id.* at ¶ 27.)  Beginning in or around February of 2022, Cuellar, a
5  foreman for defendant, "would sexually harass Acevedo every time he was assigned to work with
6  him touching him inappropriately and even on two occasions groping Acevedo's genitals."  (*Id.* at
7  ¶ 29.)  "Despite Acevedo's constant attempts to prevent" the foreman's "physical advances," the
8  foreman "continued this behavior until Acevedo's" employment with defendant ended.  (*Id.*)
9  Plaintiff Acevedo "witnessed acts of sexual harassment multiple times per week including his co-
10 workers being grabbed, kicked, and humped by" the superintendent for defendant.  (*Id.* at ¶ 30.)
11 He also "constantly experienced unwanted inappropriate sexual jokes by" the superintendent
12 "during work."  (*Id.*)  Plaintiff Acevedo reported the sexual harassment suffered to superintendent
13 Deras on or around February of 2022 and again in April of 2022.  (*Id.* at ¶ 32.)  The
14 superintendent said too much time had elapsed.  (*Id.*)
15       On July 5, 2024, defendant filed the pending motion to compel arbitration, contending that
16 as part of each plaintiff's initial hiring process, plaintiffs executed an arbitration agreement with
17 defendant, in which plaintiffs agreed to arbitrate all claims related to plaintiffs' employment with
18 defendant. (Doc. No. 4 at 10.)  Based on this agreement, defendant argues that plaintiffs' claims
19 asserted against it are subject to arbitration.  (*Id.* at 30.)  On July 29, 2024, the court issued an
20 order to show cause why plaintiffs did not file a timely opposition in compliance with this court's
21 Local Rules.  (Doc. No. 6.)  On the same day, plaintiffs filed a response to the order to show
22 cause, (Doc. No. 8), as well as their opposition to defendant's motion, in which they contend that
23 the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"),
24 9 U.S.C. §§ 401, et seq., applies to bar forced arbitration of plaintiffs' claims brought in this
25 action, (Doc. No. 7 at 2).  On July 30, 2024, the court discharged the order to show cause and set
26 the deadline for the filing of defendant's reply as August 8, 2024.  (Doc. No. 9.)  On August 8,
27 2024, defendant filed its reply.  (Doc. No. 10.)
28 /////

3

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  There is generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504 (2018).  The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).  "When deciding a motion to compel arbitration, a district court must treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation omitted).

## DISCUSSION

In its pending motion, defendant argues that plaintiffs signed a valid and enforceable arbitration agreement that purportedly covers and includes plaintiffs' claims brought in this action.  (Doc. No. 4 at 9–22.)  In opposition, plaintiffs argue that the arbitration agreement is unenforceable pursuant to the EFAA.  (Doc. No. 7 at 2–11.)  After examining the EFAA's statutory framework, the court will consider whether at least one of plaintiffs' claims alleges

4

conduct constituting a sexual harassment dispute, then whether plaintiffs' entire case relates to a sexual harassment dispute, and finally whether plaintiffs' case falls within the temporal scope of the EFAA.

**A.  The EFAA**

A recent amendment to the FAA exempts from forced arbitration those cases that are related to sexual assault or sexual harassment disputes. 9 U.S.C. § 402(a). The EFAA modifies the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.*

Under the EFAA, a "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). "An issue as to whether" the EFAA "applies with respect to a dispute shall be determined under Federal law." 9 U.S.C.A. § 402(b). Applicability of the EFAA "to an agreement to arbitrate and the validity and enforceability of an agreement to which" the EFAA "applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator." *Id.* The EFAA applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment," 9 U.S.C. § 401 note.

**B.  Whether at Least One of Plaintiffs' Claims Alleges Conduct Constituting a Sexual Harassment Dispute**

For the EFAA to apply, the plaintiff must "alleg[e] conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). A "'sexual harassment dispute' means a dispute relating

/////

5

1  to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or
2  State law." 9 U.S.C. § 401(4).

3  Federal district courts in and outside the Ninth Circuit are split as to the appropriate
4  standard for determining "the allegations that are necessary to invoke the EFAA in the first place
5  and to determine whether the statute is applicable to the case." *Diaz-Roa v. Hermes L., P.C.*, No.
6  24-cv-02105-LJL, 2024 WL 4866450, at *14 (S.D.N.Y. Nov. 21, 2024). Courts acknowledge
7  that "'[t]he EFAA's text does not definitively decide' this interpretive question." *Id.* (quoting
8  *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023)).

9  Some "[c]ourts evaluate EFAA arguments using the pleading standards of Federal Rule of
10  Civil Procedure 12(b)(6)." *Arouh v. GAN Limited*, No. 23-cv-02001-FWS, 2024 WL 3469032, at
11  *6 (C.D. Cal. Mar. 22, 2024); *see also Yost*, 657 F. Supp. 3d at 577. Other courts apply a more
12  liberal standard according to which a plaintiff need only "plead nonfrivolous claims relating to
13  sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those
14  claims to be reserved for proper merits adjudication." *Diaz-Roa*, 2024 WL 4866450, at *14; *see
15  also Turner*, 686 F. Supp. 3d at 926 (omitting reference to Rule 12(b)(6)).

16  The court is persuaded that this more liberal pleading standard is applicable to this
17  determination, and adopts the reasoning as set out by the district court in *Diaz-Roa*. 2024 WL
18  4866450, at *15 ("The Court arrives at this interpretation based on (1) the text of the statute; (2)
19  the statutory scheme; (3) Congress' intent in enacting the EFAA; and (4) the availability of the
20  routine safeguards against abusive litigation tactics already provided by federal statute and by the
21  Federal Rules of Civil Procedure."); *see also id.* at *15–*20; *cf. Grancare, LLC v. Thrower by &
22  through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) ("If a defendant cannot withstand a Rule
23  12(b)(6) motion, the fraudulent inquiry does not end there."). As such, a plaintiff need only
24  "plead nonfrivolous claims relating to . . . conduct alleged to constitute sexual harassment, with
25  the sufficiency of those claims to be reserved for proper merits adjudication." *Diaz-Roa*, 2024
26  WL 4866450, at *14.

27  Defendant appears to concede that at least three of plaintiffs' claims allege conduct
28  constituting a sexual harassment dispute. (Doc. No. 4-1 at 29–30.) These claims include

1 plaintiffs' first claim for sexual harassment hostile work environment in violation of FEHA,
2 plaintiffs' second claim for retaliation in violation of FEHA, and plaintiffs' third claim for failure
3 to prevent harassment in violation of FEHA. (*Id.*)

4        Nevertheless, the court will confirm that, at minimum, plaintiffs' claim for sexual
5 harassment hostile work environment is non-frivolously pled such that it alleges conduct
6 constituting a sexual harassment dispute. 9 U.S.C. § 401(4); 9 U.S.C. § 402(a) (defining sexual
7 harassment dispute as "a dispute relating to conduct that is alleged to constitute sexual harassment
8 under applicable Federal, Tribal, or *State* law") (emphasis added).

9        A claim for FEHA sexual harassment hostile work environment has five elements. The
10 first element requires that the "[p]laintiff belongs to a protected group[,]" for instance based on
11 sex. *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1377 (2007) (internal quotation
12 marks and citation omitted). Similarly, the third element requires that "the harassment
13 complained of was based on sex." *Id.* Evidence of "sex-specific and derogatory terms" can
14 "make it clear that the harasser is motivated by general hostility to the presence of" a particular
15 sex "in the workplace[.]" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).
16 Here, plaintiffs have provided allegations of "sex-specific and derogatory terms" such as "I don't
17 give a fuck about you, you son of a bitch . . . give me your dick." *Id.*; (Doc. No. 1-2 at ¶ 15).
18 Therefore, plaintiffs' allegations provide non-frivolous support for the first and third elements.

19        The second element of a claim for sexual harassment hostile work environment under
20 FEHA requires that the "plaintiff was subject to unwelcome sexual harassment[.]" *Jones*, 152
21 Cal. App. 4th at 1377. According to plaintiffs' complaint, when the foreman asked plaintiff Pena
22 Cardenas "you want to fuck," and "I was serious, the bathrooms are right there," plaintiff Pena
23 Cardenas rejected his advances. (Doc. No. 1-2 at ¶ 14.) Plaintiff Pena Cardenas also allegedly
24 verbalized that he was hurt. (*Id.* at ¶ 15.) Plaintiff Verdusco alleges he repeatedly asked the
25 superintendent to stop and pulled away. (*Id.* at ¶ 20.) Plaintiff Acevedo alleges he made constant
26 attempts to prevent the foreman's physical advances. (*Id.* at ¶ 29.) Therefore, plaintiffs'
27 allegations provide non-frivolous support for the second element of their claim.
28 /////

The fourth element requires that "the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Jones*, 152 Cal. App. 4th at 1377. "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances." *Id.* at 1378 (internal citations omitted). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations omitted). However, even "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." Cal. Gov't Code § 12923(b). Here, plaintiffs allege the harassment occurred frequently—3–4 times per week (plaintiff Pena Cardenas), on average every other shift (plaintiff Verdusco), or constantly (plaintiff Acevedo). (Doc. No. 1-2 at ¶¶ 17, 20, 30.) Furthermore, the alleged harassment went well beyond a mere offensive utterance to aggressive groping that resulted in plaintiff Pena Cardenas burning his finger, physical groping of plaintiff Verdusco's buttocks and groin, and groping of plaintiff Acevedo's genitals. (*Id.* at ¶¶ 15, 20, 29.) These allegations also contribute to a finding that the claimed harassment was severe. Therefore, plaintiffs' allegations provide non-frivolous support for the fourth element of their claim.

The fifth element requires a finding of "respondeat superior." *Jones*, 152 Cal. App. 4th at 1377. "FEHA makes the employer strictly liable for harassment by a supervisor." *State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1041 (2003). Because plaintiffs allege that they suffered harassment from two supervisors, a foreman and a superintendent, plaintiffs' allegations provide non-frivolous support for the fifth element.

Therefore, the court concludes that plaintiffs plead a non-frivolous claim for FEHA sexual harassment hostile work environment. As such, at least one of plaintiffs' claims alleges conduct constituting a sexual harassment dispute. 9 U.S.C. § 402(a).

/////

/////

**B.      Whether Plaintiffs' Entire Case Relates to a Sexual Harassment Dispute**

Defendant next argues that when "'a complaint contains both arbitrable and nonarbitrable claims, the [Federal Arbitration Act] requires courts to compel arbitration of pendant arbitrable claims[,]'" even where inefficiency would result. (*Id.* at 29) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011)). Therefore, defendant contends, plaintiffs should be compelled to arbitrate their remaining, non-sexual harassment claims for "constructive termination, wrongful termination, violation of Labor Code section 1102.5, and negligent retention and supervision." (Doc. No. 4-1 at 29–30.)

In their opposition, plaintiffs highlight the EFAA's standard, which bars forced application of an arbitration agreement to "'*a case*'" that "'relates to the . . . sexual harassment dispute.'" (Doc. No. 7 at 3, 5) (quoting 9 U.S.C. § 402(a)) (emphasis added). The EFAA in turn defines a sexual harassment dispute as "a dispute *relating to* conduct that is alleged to constitute sexual harassment under applicable law." 9 U.S.C. § 401(4) (emphasis added). Plaintiffs argue that they satisfy the EFAA's standard because each of their causes of action relates to the sexual harassment they suffered. (Doc. No. 7 at 4.) Plaintiffs further argue that the EFAA renders an arbitration clause unenforceable as to an entire case involving a sexual harassment claim even where the case's other claims do not relate to the alleged sexual harassment. (*Id.* at 7.)

The court finds plaintiffs' argument on this point to be persuasive. Where "the core of [the plaintiff's] case alleges 'conduct constituting a sexual harassment dispute' as defined by the EFAA[,] . . . the EFAA makes 'the entire case unenforceable under the parties' arbitration agreement." *Turner*, 686 F. Supp. 3d at 925 (citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 552–54, 557–60 (S.D.N.Y. 2023)). This is because "'the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute.'" *Id.* (quoting *Johnson*, 657 F. Supp. 3d at 559); *see also* 9 U.S.C. § 402(a) ("[N]o predispute arbitration agreement . . . shall be valid or enforceable with respect to a *case* which . . . relates to the sexual assault dispute or the sexual harassment dispute.") (emphasis added).

9

The claims defendant seeks to send to arbitration include constructive termination (of plaintiffs Pena Cardenas and Acevedo allegedly caused by the sexual harassment suffered), wrongful termination (after plaintiff Verdusco reported sexual harassment), retaliation in violation of California Labor Code § 1102.5 (in response to plaintiffs' complaints of sexual harassment), and negligent retention and supervision (of the employees who allegedly engaged in sexual harassment). (Doc. No. 1-2 at ¶¶ 62–88.) In sum, the core of plaintiffs' case alleges conduct constituting sexual harassment under California law such that the EFAA bars the entire case from forced arbitration. *Turner*, 686 F. Supp. 3d at 926–27 (denying defendant's motion to compel arbitration and finding plaintiff's entire case covered by the EFAA because the plaintiff's claims either arose from the alleged sexual harassment or substantially related to the sexual harassment claims); *see also Molchanoff v. SOLV Energy, LLC*, No. 23-cv-00653-LL-DEB, 2024 WL 899384, at *3 (S.D. Cal. Mar. 1, 2024) (denying the defendant's motion to compel arbitration and finding the plaintiff's entire case covered by the EFAA where the plaintiff's retaliation claim was based on sexual harassment).

### C. Whether Plaintiffs' Case Falls Within the Temporal Scope of the EFAA

Defendant also argues that plaintiffs' claims are not within the temporal scope of the EFAA because the Act does not apply retroactively, (Doc. No. 4 at 23–24), and because plaintiffs' claims pre-date the EFAA's enactment on March 3, 2022, (*id.* at 22–23).

The EFAA applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment," March 3, 2022. 9 U.S.C. § 401 note. "When *a* covered 'dispute' or 'claim' arises or accrues after March 3, 2022, . . . any arbitration agreement that would otherwise govern that dispute or claim may be invalidated with respect to *all* claims in the case by the person alleging the covered dispute or claim." *Clay v. FGO Logistics, Inc.*, No. 3:23-cv-01575-MPS, 2024 WL 4335791, at *12 (D. Conn. Sept. 27, 2024) (emphasis added); *see also Molchanoff*, 2024 WL 899384, at *5 ("[B]ecause Plaintiff's 2022 retaliation claim alleges conduct constituting a sexual harassment dispute—as defined by 9 U.S.C. 401(4)—, and because the case as a whole relates to that dispute, the EFAA bars enforcement of the arbitration agreement between Plaintiff and PeopleReady as to all claims in this case, and as to all

Defendants in this case."); 9 U.S.C. § 402(a) ("[N]o predispute arbitration agreement . . . shall be valid or enforceable with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute.") (emphasis added). As such, where at least *one* of the plaintiff's claims accrued on or after March 3, 2022, that same claim "alleges conduct constituting a sexual harassment dispute," and "the case as a whole relates to that dispute, the EFAA bars enforcement of the arbitration agreement . . . as to all claims in [the] case." *Molchanoff*, 2024 WL 899384, at *5. As discussed above, in support of their claim for sexual harassment hostile work environment, plaintiffs allege conduct constituting a sexual harassment dispute, and the case as a whole relates to that dispute. Therefore, the court turns to whether plaintiffs' claim for sexual harassment hostile work environment accrued on or after enactment of the EFAA.

Courts "consider [the plaintiff's] operative complaint to determine whether [the plaintiff's] claims accrued on or after" enactment of the EFAA. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 78 (2d Cir. 2024). "The term 'accrue' means the same thing under the EFAA as it does in the statute-of-limitations context." *Id.* As such, where the plaintiff brings a state cause of action, the state's rules regarding accrual apply, *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007), and "[t]he reference point for the accrual of [the plaintiff's] claims varies based on the cause of action," *Turner*, 686 F. Supp. 3d at 924.

"[T]he EFAA applies to continuing violations that occur, at least in part, after the statute's effective date, even if some of the conduct constituting the continuing violation occurred earlier." *Doe v. Second St. Corp.*, 105 Cal. App. 5th 552, 572 (2024). "California's continuing violations doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Myles v. United States*, No. 20-cv-55910, 2022 WL 4011172, at *2 (9th Cir. Sept. 2, 2022) (internal quotation marks and citation omitted).[1]

/////

---

[1] Citation to unpublished Ninth Circuit opinions throughout this opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

"[H]ostile work environment claims typically are subject to the continuing violation doctrine because unlike discrete acts, their very nature involves repeated conduct." *Doe*, 105 Cal. App. 5th at 568. Accordingly, a claim for FEHA sexual harassment hostile work environment subject to the continuing violations doctrine does not accrue until "'the last discriminatory act in furtherance of the hostile work environment.'" *Id.* at 569 (quoting *Olivieri*, 112 F.4th at 88).

"In order to show a continuing violation," a plaintiff claiming sexual harassment hostile work environment under California law "must establish that the allegedly unlawful conduct occurring outside the limitations period (1) was 'sufficiently similar in kind' to the alleged conduct within the limitations period; (2) 'occurred with reasonable frequency'; and (3) has 'not acquired a degree of permanence.'" *Fahnestock v. Waggoner*, 674 F. App'x 708, 710 (9th Cir. 2017) (quoting *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001)); *see also Birschtein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 1003 (2001) (applying the same three-part test to claims for sexual harassment hostile work environment and retaliation). Sexual harassment has acquired a degree of permanence only when the "'employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment would be futile.'" *Birschtein*, 92 Cal. App. 4th at 1004 (quoting *Richards*, 26 Cal. 4th at 823); *see also id.* at 1005–06 (quoting *Richards*, 26 Cal. 4th at 817) ("'[C]ourts . . . have tended toward a broader view of th[e] doctrine when the cause of action involves ongoing harassment or ongoing failure to accommodate disability. Even courts that have adopted the three-part *Berry* test have been inclined to find a continuing violation under these circumstances, either concluding the employer's actions had little 'permanence' or else giving little weight to the permanence factor.'").

As a preliminary matter, the court turns to whether plaintiffs' complaint alleges that any act in furtherance of the hostile work environment occurred on or after enactment of the EFAA. *Doe*, 105 Cal. App. 5th at 569. Plaintiffs' complaint does not provide specific dates for alleged incidences of sexual harassment. However, each plaintiff alleges his employment with defendant ended after March 3, 2022. (Doc. No. 1-2 at ¶ 25) (alleging plaintiff Verdusco was terminated by defendant on or around June 17, 2022); (*id.* at ¶ 13) (alleging plaintiff Pena Cardenas's

12

employment with defendant ended on approximately May 11, 2022); (*id.* at ¶ 27) (alleging plaintiff Acevedo's employment with defendant ended in approximately May of 2022). Therefore, if plaintiffs plead that they suffered sexual harassment regularly until their employment with defendant ended, then each plaintiff must have suffered sexual harassment, an act in furtherance of the hostile work environment, after enactment of the EFAA.

As noted, plaintiff Pena Cardenas alleges a foreman made inappropriate and harassing comments "at least 3-4 times per week with multiple incidents of" the foreman "pinning and holding Cardenas down while humping him." (*Id.* at ¶ 17.) Plaintiff Pena Cardenas further alleges that he "typically worked under" this foreman's "supervision" and he "would see [the foreman] every shift he worked." (*Id.* at ¶ 13.) He alleges the foreman's sexually harassing comments continued "[t]hroughout [plaintiff Pena Cardenas'] employment." (*Id.* at ¶ 16.) [2] Plaintiff Verdusco alleges that he "typically worked with the superintendent" who, beginning in 2019, "would make sexually harassing comments and physically grope Verdusco's buttocks and groin from behind on average every other shift they worked together." (*Id.* at ¶ 20.) Plaintiff Verdusco alleges that the superintendent "continued to sexually harass Verdusco throughout Verdusco's employment." (*Id.*) Plaintiff Acevedo alleges he "constantly experienced unwanted inappropriate sexual jokes by" the superintendent "during work" and "witnessed acts of sexual harassment multiple times per week including his co-workers being grabbed, kicked, and humped by" the superintendent. (*Id.* at ¶ 30.) In sum, plaintiffs' complaint includes specific allegations of repeated sexual harassment that started before enactment of the EFAA and continued throughout until each plaintiff's employment with defendant ended.

---

[2] Defendant presents evidence that plaintiff Pena Cardenas was on parental leave on and after the EFAA's enactment and did not return to work following parental leave. (Doc. No. 4-3 at 2.) Meanwhile, plaintiff Pena Cardenas's declaration states that the alleged harassment continued on and after enactment of the EFAA. (Doc. No. 7-4 at 2.) Evidence outside plaintiffs' complaint not subject to judicial notice is not relevant to the court's inquiry. *Olivieri*, 112 F.4th at 78 (Courts "consider [the plaintiff's] operative complaint to determine whether [the plaintiff's] claims accrued on or after" enactment of the EFAA.). Nevertheless, the court notes that not all the alleged harassment necessarily occurred in person at a jobsite. (Doc. No. 1-2 at ¶ 16) (alleging that plaintiff Pena Cardenas discovered a video of himself on TikTok that the foreman had taken and posted, and that the video was captioned "this guy has a large butt, and this guy doesn't have a butt").

13

Defendant argues these allegations are too "temporally ambiguous" to substantiate application of the EFAA. (Doc. No. 11 at 8.) However, defendant cites no authority for this proposition, (Doc. Nos. 7, 11), nor has the court found any. On the contrary, the United States District Court for the Northern District of California found that a plaintiff's claim fell within the temporal scope of the EFAA in even more ambiguous circumstances. *See e.g., Turner*, 686 F. Supp. 3d at 924 (finding the plaintiff's claim falls within the temporal scope of the EFAA where "the complaint does not concede that the harassment . . . ceased at any point prior to [the plaintiff's] termination" and termination allegedly occurred after enactment of the EFAA).

Having established that plaintiffs' allegations of sexual harassment continued after enactment of the EFAA, the court turns to whether plaintiffs have alleged a continuing violation under California's three-part test. Defendant does not appear to argue the continuing violation doctrine does not apply here, instead arguing only that the final instance of sexual harassment occurred before enactment of the EFAA. (Doc. Nos. 4, 11.) Still, the court notes that the elements of California's continuing violation test do appear to be satisfied in this case. The first element, that the harassment before and after enactment of the EFAA was "'sufficiently similar in kind[,]'" is satisfied because each plaintiff alleges he repeatedly suffered similar verbal and physical sexual harassment; the second element, that the sexual harassment "'occurred with reasonable frequency[,]'" is satisfied because plaintiffs allege they suffered sexual harassment 3–4 times per week, on average every other shift, or constantly; and the third element, that the sexual harassment had "'not acquired a degree of permanence[,]'" is satisfied because plaintiffs' complaint alleges no statements or actions from defendant that make clear that reconciliation was futile. *Birschtein*, 92 Cal. App. 4th at 1004 (quoting *Richards*, 26 Cal. 4th at 823); (Doc. No. 1-2 at ¶¶ 13, 16–17, 20, 30). The court concludes that plaintiffs have alleged a continuing violation such that their claim for sexual harassment hostile work environment accrued after enactment of the EFAA.

Therefore, plaintiffs' claim for FEHA sexual harassment hostile work environment is temporally within the scope of the EFAA. *Birschtein*, 92 Cal. App. 4th at 1003; *Turner*, 686 F.

/////

Supp. 3d at 924.  As such, the EFAA bars forced arbitration of plaintiffs' entire "case."  9 U.S.C. § 402(a).[3]

## CONCLUSION

For the reasons explained above,

1. Defendant's motion to compel arbitration of plaintiffs' claims (Doc. No. 4) is DENIED; and

2. The Initial Scheduling Conference is hereby RESET for March 24, 2025 at 01:30 PM in Courtroom 4 (DAD) before District Judge Dale A. Drozd.  The parties shall file a joint scheduling report by no later than March 10, 2025.

IT IS SO ORDERED.

Dated:  **February 5, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[3] Because at least one of plaintiffs' covered "claim[s] . . . accrue[d]" on or after enactment of the EFAA, the court need not address whether a "dispute . . . [arose]" on or after enactment of the EFAA.  9 U.S.C. § 401 note.

15